THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLAUDIO MONTEZ, Defendant-Appellant.

First District (5th Division)   No. 1—89—1078

Opinion filed February 14, 1992.

Rita A. Fry, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

After a jury trial, Montez, a 17-year-old gang member, was found guilty of murder for the senseless killing of Jose Vasquez, a 38-year-old man, as he sat in his car on the streets of Chicago on May 23, 1987. Montez was sentenced to a term of 40 years' imprisonment, and he now appeals his conviction and sentence.

The facts of this case, which unfortunately only too closely resemble the facts in a number of other cases involving the killing of innocent persons on the streets of Chicago, will not be recited at this time. We shall address only one of the seven issues raised by Montez and believe this one issue, the alleged violation of the so-called *Batson* rule, requires that this court remand the case back to the trial court for what is known as a *Batson* hearing. See *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

In 1986 the United States Supreme Court held that it would violate an Afro-American defendant's rights if the State exercised its peremptory challenges to exclude Afro-Americans from the jury. The Court also set forth the criteria for any defendant to establish a *prima facie* case of purposeful discrimination in the prosecutor's selection of the jury. The first step of the *prima facie* showing was that the defendant had to show that he was a member of a cognizable racial group and that the prosecutor had exercised peremptory challenges to eliminate from the venire members of the defendant's race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.

In 1991, however, the United States Supreme Court expanded the protections set forth in *Batson* when, in their decision in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364, the Court stated that regardless of the race of the defendant, it is unlawful to exclude jurors because of their race. See also *People v. Edwards* (1991), 144 Ill. 2d 108, 579 N.E.2d 336.

In the present case trial commenced in March 1989. Thus the law was not yet settled on whether the *Batson* case applied to defendants who did not share the same race as the excluded jurors. Nor was it entirely clear what facts a defendant was required to establish to prove a *prima facie* case of discrimination.

During the process of jury selection in this case, the defense moved for a mistrial after the State exercised three of its peremptory challenges to exclude black venirepersons. The State's response to the defendant's motion was an assertion "for the record" that the reason for the exercise of peremptories was not race related. However, the State then went on to make the following comments:

> "In addition, judge, we would point out that the defendant does not have a right to make a Batson claim of violation in this situation because he is not a member of the same minority group which these last three challenges were related to. The defendant's minority group is Hispanic and the race of the three jurors in question appears to be black."

The trial court then denied the motion for mistrial stating the following:

> "Well, also I'd have to agree with the [S]tates [A]ttorney that observing the witnesses or excuse me, prospective jurors in question, I can see that as a trial tactic any number of reasons other than race would lead a trial lawyer to excuse them. And further, the record should reflect that Mr. Montez is not a member of the black race."

Jury selection continued and the State went on to exclude two more black venirepersons. Each time the defense renewed its motion for mistrial, and each time the State argued vehemently that "the law is very clear" that a defendant does not have the right to make a *Batson* claim unless he is of the same race or minority as the excluded juror. The trial court then denied the motions without further comment.

At the close of the jury selection, and when pressed by the defense, the trial court did comment that it found the jury to be a representative cross-section of the population, but it made no specific findings as to whether or not it appeared that any of the five excluded jurors had been removed for reasons that stemmed from their race or whether the defense had set forth sufficient facts to make out a *prima facie* case of discrimination. In fact, none of the terminology often associated with a trial court's ruling on a *Batson* claim was utilized. The court merely stated, "The record is clear. The motion is denied."

■ We, however, do not find that the record is clear since it does not obviate the court's rationale for denying the motions. Although the trial court gave some indication that it did not find a *Batson* violation based upon the State's exercise of its peremptory challenges to exclude certain venirepersons, it is unclear whether the trial court arrived at that decision, in whole or in part, based upon a belief that defendant had no right to challenge the State's removal of Afro-Americans from the venire. Furthermore, because it appears to this court that both the State and the trial judge assumed that defendant had no standing, we believe that Montez was not given a full opportunity to attempt to establish a *prima facie* case. Therefore, although both the public defender and the State make forceful arguments for their respective positions concerning the resolution of the *Batson* issue by this court, we believe that it is in the best interests of justice, and in accordance with Illinois law, that the cause be remanded back to the trial court for a *Batson* hearing so that the trial court may clarify its ruling. See *People v. Holman* (1989), 132 Ill. 2d 128, 547 N.E.2d 124 (remand for a *prima facie* determination would be proper where the defendant has not had a full opportunity to substantiate his claim and the record on review was developed under a different set of standards).

Due to our ruling above and because this court has found that, invariably, no matter what the trial court rules in a *Batson* hearing the matter is litigated on review, we decline to rule at this time on the other issues set forth in this appeal. Rather, we believe that it would be in the interest of judicial economy for this court to retain jurisdiction over the remaining issues on appeal until such time as the trial court rules on the *Batson* claim. In the event that the trial court finds a violation of *Batson* and orders a new trial, some of the issues raised in this appeal would become moot. If, however, the trial court finds no *Batson* error, we may consider that ruling along with all of the other alleged errors already raised in this appeal.

For the reasons stated above, we remand this case to the trial court with directions that an expedited hearing be held solely on the issue of whether the State violated Montez's rights by exercising its peremptory challenges to exclude five black prospective jurors.

Remanded.

McNULTY, P.J., and GORDON, J., concur.